IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOI AYTCH et al.,

    *Plaintiffs*, *on behalf of themselves and others similarly situated*,

    v.

TRULIFE HEALTH SERVICES, LLC, d/b/a TRULIFE HEALTH SERVICES et al.,

    *Defendants*.

Civil Action No. ELH-17-2769

**MEMORANDUM OPINION**

Plaintiffs Toi Aytch, Sharnette Morris, and Aiesha Beaty have filed suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against Trulife Health Services, LLC ("Trulife") and Ijeaku Ezekwesili, plaintiffs' employers. ECF 20 (Second Amended Complaint). Plaintiffs allege "willful refusal" by defendants "to pay [plaintiffs'] wages, including overtime and travel-time wages." *Id.* ¶ 1. They characterize the suit as both a collective action under the FLSA and as a class action under Fed. R. Civ. P. 23(b)(3). ECF 20, ¶ 48. Plaintiffs have also lodged claims under the Maryland Wage and Hour Law, Md. Code, § 3-401 *et seq.* of the Labor & Employment Article ("L.E.") (ECF 20 at 12-13) and the Maryland Wage Payment and Collection Law, L.E. § 3-501 *et seq.* ECF 20 at 13. In addition, the Complaint includes a count by Beaty for retaliation, under the FLSA. *Id.* at 14.

Two additional plaintiffs have joined the suit since its initial filing, pursuant to 29 U.S.C. § 216(b). They are April Wright (ECF 8-5) and Isa Reaves. ECF 16.

Now pending before the Court is plaintiffs' "Motion for Conditional Collective Action Certification and Court-Facilitated Notice" (ECF 14), supported by a memorandum of law (ECF 14-1) (collectively, "Motion") and exhibits. The exhibits include, *inter alia*, the Declaration of

Toi Aytch (ECF 14-5); the Declaration of Sharnette Morris (ECF 14-6); the Declaration of Aiesha Beaty (ECF 14-7); and the Declaration of April Wright. ECF 14-8.

In the Motion, plaintiffs also ask the Court to approve a proposed "Notice of Collective Action" (ECF 14-3) and a form titled "Consent to Join Collective Action" (ECF 14-4, "Opt-In Form") (collectively, "Proposed Notice"), to be sent to potential opt-in plaintiffs. *See* ECF 14-1 at 2. Pursuant to 29 U.S.C. § 216(b), plaintiffs ask the Court, ECF 14-1 at 9, to:

> approve the issuance of notice to all individuals employed by Trulife and Defendant Ezekwesili, at any time since three years before the date of the Court's Order resolving the instant Motion, who did not receive overtime compensation due for hours worked in excess of 40 per week, including for weeks in which overtime hours resulted from compensable travel time.

Defendants oppose the Motion. ECF 15 ("Opposition"). They do not dispute that plaintiffs are similarly situated. However, they question whether other plaintiffs will join the suit, and complain that the Proposed Notice is overbroad. *See id.* Plaintiffs have replied (ECF 17, "Reply"), and have submitted three examples of prior Notices of Collective Action signed by judges of this Court. ECF 17-1 to ECF 17-3.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall GRANT the Motion as to the conditional certification.

## I.  Factual Allegations[1]

Plaintiffs are current and former employees of Trulife, a for-profit home care agency. ECF 20, ¶ 1. Defendant Ezekwesili is one of Trulife's owners. *Id.* According to plaintiffs, Trulife and Ms. Ezekwesili employ approximately 40 home care aides at a time. *Id.*

Plaintiffs' work duties included traveling to the homes of various clients and "assisting clients with toileting, bathing, mobility, cleaning, food preparation, and general housekeeping,

---

[1] The factual allegations are drawn largely from the Second Amended Complaint and the exhibits to the Motion.

and accompanying clients to medical and other appointments." ECF 20, ¶ 17. Ms. Ezekwesili allegedly directed plaintiffs' work and exercised control over their schedules and their hourly wages. *Id.* ¶ 18. Plaintiffs aver that their pay rates ranged from $11 to about $13 per hour, and that they often worked more than 40 hours per week. *Id.* ¶¶ 19-22, *see* ECF 14-6, ¶ 3. However, plaintiffs allege that they were not paid an overtime rate for hours worked beyond 40 per week. ECF 20, ¶ 23. Moreover, plaintiffs assert that they were not compensated for travel time, even when they were assigned back-to-back shifts at the homes of different clients. *Id.* ¶ 24.

Plaintiffs Aytch, Morris, Beaty, and Wright all submitted Declarations to this effect, asserting that they were paid a flat hourly rate; were never paid overtime even when they worked more than 40 hours a week; were directed by Ms. Ezekwesili; and were not paid for travel time. *See* ECF 14-5, ECF 14-6, ECF 14-7, ECF 14-8. As such, plaintiffs allege that they were similarly subject to defendants' scheme to violate the FLSA, and that the case is therefore properly certified as an FLSA collective action. ECF 20, ¶¶ 35-41. Furthermore, plaintiffs claim that the action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3), because common questions of law or fact predominate, and because a class action would be more efficient than the institution of individual suits. ECF 20, ¶ 48.

## II. Discussion

### A. Conditional Certification under the FLSA

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*); *see Encino Motorcars, LLC v. Navarro*,

___U.S.___, 136 S. Ct. 2117, 2121 (2016); *Morrison v. Cnty. of Fairfax, Va.*, 826 F.3d 758, 761 (4th Cir. 2016); *see also McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) ("Congress enacted the FLSA to protect 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.'") (citations omitted). In particular, "the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134, 1138 (2018) (citation omitted); *see Perez v. Mortgage Bankers Ass'n*, ___U.S.___, 135 S. Ct. 1199, 1204 (2015), *Integrity Staffing Solutions, Inc. v. Busk*, ___U.S.___, 135 S. Ct. 513, 516 (2014); *see also Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) ("The FLSA requires that employers pay employees the minimum hourly wage 'for all hours worked.'") (quoting *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011)). Moreover, the FLSA has established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)).

Thus, the FLSA is now "best understood as the 'minimum wage/maximum hour law." *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted). As the Fourth Circuit said in *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1266-67 (4th Cir. 1996): "The two central themes of the FLSA are its minimum wage and overtime requirements. . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages." (Internal quotations omitted).

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*,

532 F. Supp. 2d 762. 771 (D. Md. 2008). Section 216(b) "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771.

Section 216(b) states, in pertinent part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Pursuant to § 216(b), "[d]eterminations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). Generally, when assessing whether to certify a collective action pursuant to the FLSA, district courts in this circuit adhere to a two-stage process. *See, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *see also Flores v. Unity Disposal & Recycling, LLC*, GJH-15-196, 2015 WL 1523018, at *2-3 (D. Md. Apr. 2, 2015); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

"In the first stage, commonly referred to as the notice stage, the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Butler*, 876 F. Supp. 2d at 566 (internal quotations omitted). The second stage is sometimes referred to as the decertification stage. *Butler*, 876 F. Supp. 2d at 566. "In the second stage, following the conclusion of discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] similarly situated in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a

collective action." *Syrja*, 756 F. Supp. 2d at 686 (internal quotations and citations omitted) (alterations in *Syrja*).

The Motion pertains only to the first step of conditional certification. *See generally* ECF 14. The central question "is whether [plaintiffs] are similarly situated in a way that suggests they were victims of a common policy, scheme, or plan that violated the FLSA." *Desmond v. Alliance, Inc.*, CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May 7, 2015). So long as "the plaintiffs have offered enough evidence for the court to make such a determination, and if differences between individuals (whether with the same job or different job titles) do not make clear that a collective action would be unmanageable . . . a notice-stage certification is appropriate." *Id.* (internal citations omitted); *cf. Syrja*, 756 F. Supp. 2d at 688 (denying conditional certification because "the adjudication of multiple claims . . . would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries").

At the first stage, to warrant conditional certification, a plaintiff need only show that the proposed members of the collective are "similarly situated" within the meaning of 29 U.S.C. § 216(b). *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (citations omitted). "'[S]imilarly situated' need not mean 'identical.'" *Bouthner v. Cleveland Const., Inc.*, RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) (citation omitted). Moreover, at the stage of conditional certification for FLSA collective actions, plaintiffs generally must make "only a relatively modest factual showing" as to the existence of a common policy, scheme, or plan that violates the FLSA. *Butler*, 876 F. Supp. 2d at 566; *see Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006).

Indeed, "[b]ecause the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Calderon v. Geico General Ins. Co.*, RWT-10-1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (quoting *Yeibyo v. E-Park of DC, Inc.*, DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008)) (second alteration in *Calderon*). However, plaintiffs must provide "more than vague allegations with meager factual support, but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 576 (D. Md. 2014) (citing *Mancia*, CCB-08-0273, 2008 WL 4735344, at *2) (alteration in *Randolph* and internal quotations and citations omitted). And, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper*, 200 F.R.D. at 520 (citations omitted).

To make the requisite showing, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Camper*, 200 F.R.D. at 520. Notably, "[p]laintiffs may rely on '[a]ffidavits or other means,' such as declarations and deposition testimony." *Butler*, 876 F. Supp. 2d at 567 (quoting *Williams v. Long*, 585 F. Supp. 2d 679, 684-85 (D. Md. 2008)) (alterations in *Butler*). Based on the submissions, the court "determines whether there is sufficient evidence to reasonably determine that the proposed class members are similarly situated enough to conditionally certify the collective action and provide potential class members with initial notice of the action and the opportunity to 'opt-in.'" *Houston*, 591 F. Supp. at 831.

### B. The Class

As indicated, defendants do not argue that plaintiffs are not similarly situated. Instead, defendants oppose conditional certification on the ground that "Plaintiffs have put forth no

evidence of any intention of other opt-in plaintiffs to join in this action." ECF 15 at 1. Defendants assert that "none of [the] other potential class members have expressed any desire to join this suit, which hardly creates a need for collective action." *Id.* at 5.

In support of their argument, defendants cite a number of cases, none of which come from the Fourth Circuit or district courts within the Fourth Circuit. ECF 15 at 5-6. And, most of these cases are readily distinguishable from this one. For example, in *Perez v. Prime Steak House Rest. Corp.*, 959 F. Supp. 2d 227, 232 (D.P.R. 2013), the court hesitated to certify a class comprising all of the employees of a chain restaurant with multiple locations in the territory when the named plaintiffs of the suit worked at only one location. Here, however, there is no suggestion that Trulife had multiple offices. Likewise, in *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011), the court declined to conditionally certify a class when the sole plaintiff was "unable to produce a single other individual interested in participating as a plaintiff in [the] case." That circumstance is not present here.

Defendants have offered no authority to suggest that this Court has ever applied such a burden at the conditional certification stage, and I shall decline to do so. In any event, since the date the three original plaintiffs (Aytch, Morris, and Beaty) filed their suit, two other plaintiffs (Wright and Reaves) have opted in, even before notice was issued. Defendants' argument is unavailing.

Because defendants raise no other arguments in opposition to the conditional certification of plaintiffs' putative class, I shall grant the Motion as to conditional certification. The only remaining questions pertain to the form and substance of the notice to the class.

### C. The Notice

In class actions founded on the FLSA, "district courts must be able to supervise contacts between the parties and their respective counsel to ensure that potential plaintiffs are not misled about the consequences of joining a class in an ongoing employment dispute." *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 144 (4th Cir. 2018). *See also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (stating that in class actions, "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice"). Accordingly, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler*, 876 F. Supp. 2d at 574 (citations omitted).

As noted, plaintiffs have provided a Proposed Notice (ECF 14-3) to be sent to potential opt-in plaintiffs. However, defendants maintain that plaintiffs' Proposed Notice has several defects.

First, defendants maintain that the notice should not bear any imprimatur of this Court, including a judicial signature, because this might suggest that the Court endorses the lawsuit on the merits. ECF 15 at 7-8. I disagree. The Proposed Notice expressly states, just above the signature line, ECF 14-3 at 3: "This Court takes no position regarding the merits of the parties' claims or defenses." That proviso is adequate. Moreover, as plaintiffs point out (ECF 17 at 7), this Court has included the judge's signature in prior cases. *See, e.g.*, *Mendoza v. Mo's Fisherman Exch., Inc.*, ELH-15-1427, at ECF 42-1. However, the Court will require that the proviso appear in bold type, consistent with other sentences that are highlighted.

Second, defendants submit that any potential opt-in plaintiffs should be notified that they may be liable for court costs associated with the action if they choose to join. ECF 15 at 8-9. Plaintiffs vigorously oppose this suggestion, and assert that the inclusion of this language would

have an *in terrorem* effect on potential plaintiffs. ECF 17 at 8-9. I am satisfied that this Court generally does not include such notifications of potential liability in notices to a proposed class. *See McFeeley v. Jackson St. Entm't, LLC*, DKC-12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012).

Third, defendants request that the notice include an advisement to potential opt-in plaintiffs that they should not contact the Court. ECF 15 at 9. Defendants maintain that the failure to include this advisement increases the "the risk of creating judicial endorsement of the action." *Id.* at 9-10. Plaintiffs claim that such language is unnecessary, given the clear disclaimer of judicial endorsement. ECF 17 at 8-9. I agree that, as a matter of practice, potential plaintiffs should not contact the Court with questions about the litigation. Therefore, such language shall be included in the notice, following the statement that the Court takes no position on the litigation.

Fourth, defendants wish to include, for the sake of balance, information about defense counsel as well as plaintiffs' counsel. ECF 15 at 10. In Reply, plaintiffs assert that the "inclusion on the Notice of information concerning Defense counsel does not serve [the] purpose [of a collective action notice] . . . . Moreover, listing defense counsel may confuse potential class plaintiffs . . . ." ECF 17 at 6.

Although defendants do not specify what information they would like to include, it appears from the cases they cite that the inclusion of the names and addresses of defense counsel, but not the telephone numbers, is customary. ECF 15 at 10. Plaintiffs concede that this Court has previously ordered the inclusion of similar information. ECF 17 at 6 (citing *Arevalo v. D.J.'s Underground, Inc.*, DKC-09-3199, 2010 WL 2639888, at *4 (D. Md. June 29, 2010)). Therefore, plaintiffs propose that, if the Court orders inclusion of defense counsel's information,

the information be restricted to counsel's name and address, with the following proviso: "While Defendants' attorneys may not deliberately mislead potential plaintiffs, they are obligated to act in the best interests of Defendants." ECF 17 at 6. This compromise is reasonable and appropriate. Therefore, it shall be included in the notice, modified as follows: "Defendants' attorneys may not deliberately mislead potential plaintiffs. But, they are obligated to act in the best interests of Defendants, just as Plaintiffs' counsel is obligated to act in the best interests of Plaintiffs."

Fifth, defendants seek to strike language in the Proposed Notice inviting potential plaintiffs to contact plaintiffs' counsel if they feel they have been retaliated against for participating in the lawsuit. ECF 15 at 10-11. Defendants maintain, *id.* at 11: "There is simply no reason for the inclusion of this language in the proposed notice other than to help Plaintiffs' business portfolio." In response, plaintiffs cite several cases from this Court in which language concerning retaliation has been included in a notice. ECF 17 at 9. They point out that an advisement about retaliation "is critical because the very first question likely to arise in the mind of a class member currently employed by Defendants is whether participation in this suit places her livelihood at risk." *Id.* I agree with plaintiffs. Accordingly, I shall not strike from the notice the language on retaliation.

Sixth, defendants seek an opt-in period of 60 days, rather than the 90 days sought by plaintiffs. ECF 15 at 11-12. They represent that "courts in this Circuit routinely find that an opt-in period between 30-60 days is appropriate." *Id.* at 11. However, defendants cite no cases from this Court. Several cases in this District have authorized a 90-day notice period for FLSA class actions. *See, e.g.*, *Mendoza v. Mo's Fisherman Exch., Inc.*, ELH-15-1427, 2016 WL 3440007, at

*20 (D. Md. June 22, 2016); *Butler*, 876 F. Supp. 2d at 575; *McFeeley*, 2012 WL 5928902 at *5. Nevertheless, in the context of this case, 75 days is sufficient.

Seventh and finally, defendants are opposed to the posting of the notice on social media websites, such as Facebook, as requested by plaintiffs, and assert that the creation of a website for the lawsuit would cause reputational harm to defendants while being of little value to plaintiffs. ECF 15 at 12-14. Defendants are "willing to provide Plaintiffs with the contact information of the other employees during the relevant time period" (*id.* at 12), which plaintiffs interpret as an agreement to "provide Plaintiffs a computer-readable database of names, last known addresses, phone numbers, e-mail addresses, and dates of employment for all class members." ECF 17 at 5. As a result of defendants' offer, plaintiffs are "willing to withdraw their request for permission to produce a Facebook ad and their attendant request to produce a website containing the Notice . . . ." *Id.* If indeed the parties are amenable to this arrangement, I shall approve it.

### III. Conclusion

For the reasons stated above, I shall GRANT plaintiffs' Motion as to the conditional certification of the class. By April 27, 2018, the parties are directed to submit a revised Proposed Notice. An Order follows.

Date: April 12, 2018                                  /s/
                                                                    Ellen Lipton Hollander
                                                                    United States District Judge